UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BAILEY RINEHART, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-CV-10413 |
| | ) | |
| v. | ) | |
| | ) | Judge Elaine E. Bucklo |
| CHICAGO PUBLIC SCHOOLS, *etc.*, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO FACTS IN SUPPORT OF THE BOARD'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, BAILY RINEHART ("Rinehart"), pursuant to Local Rule 56.1(a)(3), submits

the following responses to Defendant's Statement of Material Facts in Support of its Motion for

Summary Judgment:

**I.      Plaintiff's Educational History**

1.      Plaintiff, Bailey Rinehart ("Plaintiff"), is a former student of Chicago Public

School ("CPS") Morgan Park High school ("Morgan Park"). Ex. 1, Plaintiff's Dep. Transc. at

11:4-7.

**Response:**      Admit.

2.      A majority of the students who attend Morgan Park report their race as African-

American. See ECF. No. 6, ¶7.

**Response:**      Admit.

3.      Prior to attending Morgan Park, Plaintiff attended St. Rita High school ("St.

Rita"), a non-CPS school, for his freshman year and for one semester of his sophomore year. Ex.

1 at 11:4-7.

**Response:**      Admit.

1

4.      Although Plaintiff claims he stopped going to St. Rita for financial reasons, Plaintiff was in fact kicked out of St. Rita for smoking marijuana. Ex. 1 at 12:6-8; 268:11-16; Ex. 2, Plaintiff's Student Records from St. Rita High School; Ex 3, Plaintiff's Step-Father's Dep. Transc. at 22:19-23:15; 24:4-6; 62:13-64:8.

**Response:**      Plaintiff objects to and moves to strike this statement as the reason Plaintiff found himself at Morgan Park is irrelevant to any issue in this case.  Moreover, this statement is being offered for the sole purpose of unfairly prejudicing Plaintiff.   Further, Defendant has not laid any foundation for Plaintiff's Student Records from St. Rita and therefore does not establish any exception to the rules of hearsay.  Finally, there is nothing in Plaintiff's student records from St. Rita which indicates that Plaintiff was kicked out for smoking – the one disciplinary notice indicates that a "blue slip" was issued to Bailey for instances of talking, sleeping, and eating in class.

5.      Plaintiff attended Morgan Park for half of his sophomore year, junior year, and part of his senior year, i.e. from January 2013 to November 2014, after he was kicked out of St. Rita. *Id.*; Ex. 4, Plaintiff's CPS Enrollment History.

**Response:**      Deny.  *See*, Plaintiff's Response to ¶ 4.  Admit that Plaintiff attended Morgan Park from January 2013 to November 2014.

6.      During his first semester of his freshman year at St. Rita, Plaintiff he had a 3.0 grade point average; during the second semester of freshman year, he had a 1.4 grade point average; and during the first semester of his sophomore year, he had a 2.2 grade point average. Ex. 2.  Contrary to Plaintiff's testimony that he received majority A's and B's at St. Rita, on June 21, 2012, Plaintiff received a "Notice of Academic Probation" for failing 2 semesters in the 2011- 2012 school year. Ex. 1 at 132:7-15; Ex. 2.

2

**Response:**     Plaintiff objects to and moves to strike these statements as Plaintiff's grade point average at St. Rita is irrelevant to any material issue on summary judgment. Moreover, these statements are being offered for the sole purpose of unfairly prejudicing Plaintiff.

7.      Plaintiff's grade point average at Morgan Park went up. At the end of his sophomore year at Morgan Park, Plaintiff's grade point average was 2.25; and 2.4 at the end of his junior year.  Ex. 5, Plaintiff's Grades at Morgan Park.

**Response:**     Plaintiff objects to and moves to strike these statements as Plaintiff's grade point average at Morgan Park is irrelevant to any material issue on summary judgment. Moreover, these statements are being offered for the sole purpose of unfairly prejudicing Plaintiff.

8.      Plaintiff met his now wife, Julia Rinehart, a month after he started attending Morgan Park.  Plaintiff's wife also attended Morgan Park. The two of them hung out and smoked marijuana together almost every day. Ex. 6 at 44:5-7; 44:20-45:7; 46:1-6.

**Response:**     Plaintiff objects to and moves to strike these statements as Plaintiff's relationship with his wife or their recreational drug use is irrelevant to any material issue on summary judgment.  Moreover, these statements are being offered for the sole purpose of unfairly prejudicing Plaintiff.  Finally, Plaintiff's wife testified that she graduated when Bailey was a sophomore, so she was not "really even there with him."  Julia Rinehart Dep. at 57, lns. 14-18.

9.      According to Plaintiff's wife, his grades were consistently above average until he stopped going to school at Morgan Park. *Id.* at 78:23-79:7.

**Response:** Plaintiff objects to and moves to strike this statement as Plaintiff's grade point average at Morgan Park is irrelevant to any material issue on summary judgment. Moreover, this statement is being offered for the sole purpose of unfairly prejudicing Plaintiff.

10.     Plaintiff and his wife are white. *Id.* at 52:14-19.  Plaintiff's wife was never targeted by students because she was white. Ex. 6 106:1-107:12.

**Response:** Admit that Plaintiff is white.  Plaintiff objects to and moves to strike the remaining statements as the race of Plaintiff's wife and whether or not she was targeted by other students at Morgan Park is irrelevant to any material issue on summary judgment.

**II. Morgan Park Policies and Trainings**

11.     Around November 2014, there were approximately 15-16 security personnel at Morgan Park. Ex. 14 at 8:13-22.

**Response:** Admit.

12.     Security personnel at CPS train security officers on an annual basis before school starts and mid-year as well. *Id.* at 38:1-17.

**Response:** Admit.

13.     Morgan Park established a team of personnel to serve as a Culture and Climate Team which was tasked with keeping a positive school atmosphere. *Id.* at 41:10-19. The Culture and Climate Team worked together collaboratively to provide extra support for the students. Ex. 7 at 7:814. The Team worked on improving student attendance and creating a climate to encourage students to invest in the school. *Id.* at 15:16-16:1.

**Response:** Admit.  Mr. Wesley Yates, the Culture Climate Coordinator, explained, "[i]t was a group of individuals who were placed in various Chicago Public Schools to identify some of the problems and to make some of the corrections as it relates to the mindset of not only

the scholars, but of the staff as it relates to academics and behavior issues." Yates Dep., hereto

attached as Exhibit A, at 8, lns. 7-13. With respect to Morgan Park, the team focused on "[t]he

way our scholars responded to one another; the way they resolve conflict; and the way that they

spoke with the staff personnel." *Id.* at 9, lns. 1-5. Mr. Yates worked with students who belonged

to "The Jungle," which was the collective name for the Black Gangster Disciples and the

Gangster Disciples, both primarily African-American gangs. *Id.* at 11, lns. 9-21; 12, lns. 7-13.

14.     Morgan Park's Dean's office follows the Board's anti-bullying policy, which is

also a part of the Student Code of Conduct. *Id.* at 118:13-22; Ex. 18, Student Code of Conduct.

School officials also receive training on the anti-bullying policy. Ex. 19, PowerPoint

Presentation Slides on Anti-Bullying Training.

**Response:**     Plaintiff admits there is an anti-bullying policy which is part of the Student

Code of Conduct and that school officials may have received training but denies that Morgan

Park's Dean's office followed either the anti-bullying policy or any anti-bullying training. See

generally, Statement of Additional Facts Requiring Denial of Summary Judgment ("Addl.

Facts") at ¶¶ 1-50.

**III.     Morgan Park Atmosphere**

15.     While attending Morgan Park, Plaintiff and his wife, who also attended Morgan

Park, witnessed numerous fights amongst various students. Ex. 1 at 269:3-4; Ex. 6 at 65:4-11.

Plaintiff witnessed over one hundred fights, and Plaintiff's wife witnessed fights at least three to

four times per week and sometimes multiple times throughout the day. *Id.*

**Response:**     Admit.

16.     According to Plaintiff and his wife, the majority of the fights were due to gang

rivalry, guys fighting over girls, or girls fighting over a guy. Ex. 6 at 65:12-20. Plaintiff even

5

initiated a fight of his own over his wife. *Id.* at 107:23-108:23. Plaintiff's mom also believed that Plaintiff was picked on by "the gangs at Morgan Park" and not because he is white. Ex. 11 at 17:22-18:8.

**Response:** Plaintiff objects to these statements and moves to strike them as the fact that there may be other reasons for the fights occurring at Morgan Park does not make it any less likely that Bailey was harassed and bullied, at least in part, because of his race.

17. Since the majority of the students at Morgan Park are African-American, the majority of the fights witnessed by Plaintiff were among African-Americans students. Ex. 1 at 263:14-18.

**Response:** Plaintiff objects to this statement and moves to strike it; the fact that African Americans students also fight with persons of their same race does not make it any less likely that Bailey was harassed and bullied, at least in part, because of his race.

18. T.D., a student Plaintiff would later learn had caused him a majority of his problems, was expelled and got into numerous fights with other students often. Ex. 12. T.D.'s Misconduct Reports/Verify Reports; Ex. 13, Dean Edward McKnight's Dep. Transc. at 15:18-16:8; Ex. 15 at 37:3-38:2. Apart from Plaintiff, almost all of T.D.'s fights were with other African-American students. Ex. 12.

**Response:** Plaintiff objects to this statement and moves to strike it; the fact that T.D. fought with other African American students does not make it any less likely that Bailey was harassed and bullied, at least in part, because of his race.

19. When T.D. was caught fighting, school officials would discipline him. School officials took multiple steps to help modify T.D.'s behavior, including but not limited to: restorative conversations and formal conferences. Ex. 13 at 16:15-24; 29:8-30-2.

**Response:**     Admit.  *But see*, Addl. Facts at ¶¶ 43, 46-50.

**IV.     Plaintiff Never Complained of Racial Harassment; Only General Harassment**

20.     Plaintiff never made a written complaint of harassment to anyone at Morgan Park. Ex. 1 at 13-23.

**Response:**     Admit.  However, Ms. Bedore identified an incident report that would be required to be filled out if there were any reported instances of bullying.  Bedore Dep., hereto attached as Exhibit B, at 44, lns. 14-24; 45, lns. 1-4, 8;  *see also*, Addl. Facts at ¶¶ 34-35. Neither Plaintiff nor his mother were ever offered the option of filling out an incident report.

21.     During the 2012-2013 school year, Plaintiff alleges that he was jumped by African-American students on four occasions. See Ex. 1 at 147:24-153:24:8; 155:1-22; 167:4-22; 168:6-169:21; 187:12-190:3. Except for a lunch room food fight when a student mistakenly thought Plaintiff threw something at him, each time the other students jumped Plaintiff they would pick-pocket him and/or try to steal his belongings. *Id.* Plaintiff thought the students ran his pockets to see if he would allow it or because it was a "gang or respect thing." *Id.* at 268:1-4; 188:6-10. Plaintiff often was successful in fighting back to get the students off of him. *Id.* at 147:24-153:24:8; 155:1-22; 167:4-22; 168:6-169:21; 187:12-190:3.

**Response:**     Admit.  Plaintiff also believed that he was being harassed and bullied because of his race.  Declaration of Bailey Rinehart, hereto attached as Exhibit C, at ¶¶ 8-10; Addl. Facts at ¶¶ 2, 14, 15, 17, 19.

22.     Sometime after the 2012-2013 school year, Plaintiff alleges students jumped him two additional times wherein the students again attempted to take his personal belongings. Ex. 1, 205:6-206:2; 221:10-222:21.

**Response:**     Admit.

23.     After being pick-pocketed the first time, Plaintiff's wife, who had already been at Morgan Park for a year, warned Plaintiff that it was harder for boys who first start going to Morgan Park than girls. Guys are asked to be a part of gangs and forced to make choices, and therefore subject to more physical fights. Ex. 6 at 64:6 – 65:3.

**Response:**     Plaintiff objects to and moves to strike these statements as the personal opinion of Plaintiff's wife concerning this matter is irrelevant.

24.     In addition, Plaintiff believed students who were a part of a specific gang targeted him; a rival gang to one that many of his baseball teammates were allegedly on. He believed he was being targeted because he associated himself with his teammates and therefore thought to be a member of a certain gang. Ex. 6 at 97:18-88-7; 100:19-101:13; Ex. 3 at 86:4-14.

**Response:**     Admit.  But *see*, Exhibit C at ¶¶ 8-10;  Addl. Facts at ¶¶ 2, 14, 15, 17, 19.

25.     Plaintiff's wife alleges that other students called Plaintiff "honky" and "white boy," but cannot identify the students other than that they: (1) were always causing a "ruckus" and/or (2) would get in fights with other African-American students often as well. Ex. 6, 89:17-91:8.  In addition, Plaintiff never informed administration about being called any of these types of terms. Ex. 1 at 194:18-195:19 (refers to "white trash," "cracker," and "white boy") Ex. 15 at 64:19-22.

**Response:**     Plaintiff objects to and moves to strike these statements as Plaintiff's wife did not have any personal knowledge of the incidents.  Moreover, Plaintiff did report to administration that he was being called derogatory names.  Addl. Facts at ¶ 17.

26.     Plaintiff's mom testified that she personally witnessed other students call Plaintiff racially derogatory names approximately sixty times, but never asked Plaintiff if he knew the

students' names. Ex. 11 at 149:21-150:1. Plaintiff's mom alleges that she made complaints regarding these incidents but did not identify any specific offenders. *Id.* at 150:14-151:3.

**Response:**     Admit.  But *see*, Addl. Facts at ¶¶ 23, 25, 32-41.

27.     Plaintiff's mom alleges that she made complaints to numerous individuals at Morgan Park about Plaintiff being harassed but failed to ever provide names of the alleged offenders and never stated that Plaintiff was being harassed due to his race. Ex. 11 at 156:1-10; 157:1-162:16; 164:24-166:2; 167:4-168:22; 173:8-174:23; 177:10-178:17; 179:4-182:4; 189:2-19; 204:20-210:22; 213:1-217:4; 217:5-219:20; 219:20-221:24; 222:12-20; 225:16-226:17; and 276:8-16.

**Response:**     Admit.  But *see*, Addl. Facts at ¶¶ 23, 25, 32-41.

**V.      Principal Epps' Response to Plaintiff's Mother's Complaints**

28.     Epps became Morgan Park's Principal in March 2013. Ex. 15, Principal Epps's Dep. Transc. at 7:20-8:1.

**Response:**     Admit.

29.     In April 2013, Plaintiff's mom complained to Aviva Theen, one of Plaintiff's teacher's that he was being bullied in class, and Ms. Theen brought this matter to Principal Epps' attention. *Id.*  at 43:24-44-13; Ex. 16, Email Correspondence between Theen/Epps/Washington.

**Response:**     Admit.

30.     Principal Epps responded with follow up questions and asked Assistant Principal Remy Washington to look into Plaintiff's allegations. Ex. 15 at 43:8-21; Ex. 16.

**Response:**     Admit.

31.     Remy Washington investigated the matter and talked with Plaintiff's mom about her complaints. Ex. 15 at 69:15-70-15; Ex. 16.

**Response:** Plaintiff objects to and moves to strike this assertion as it is based upon hearsay.

32. In the Fall of 2013, Plaintiff's mom called Principal Epps to complain that her son was being harassed and bullied. *Id.* at 13:15-16; 14:4-9. Principal Epps asked Plaintiff's mom for details, e.g. names or specific incidents, and Plaintiff's mom could not provide any. *Id.* at 14:4-9. Principal Epps assured Plaintiff's mom that she would speak to Plaintiff, look into it, and call her back. *Id.* at 14:17-21.

**Response:** Admit that Plaintiff's mom called Principal Epps to complain that her son was being harassed and bullied. Deny remainder of allegations. Addl. Facts at ¶¶ 22-28.

33. Thereafter, Principal Epps paged Plaintiff and spoke with him in her office. *Id.* at 14:22-23.

**Response:** Deny. Exhibit C at ¶¶ 1-7.

34. Principal Epps explained that his mom had called her complaining that he was being harassed, and asked Plaintiff if in fact he was being harassed. Plaintiff denied being harassed. *Id.* at 15:10-14.

**Response:** Deny. Exhibit C at ¶¶ 1-7.

35. Plaintiff Epps told Plaintiff that if he was having problems, to let a teacher know or an administrator and to provide specific details, so that the issue could be addressed. *Id.* at 18:1-4.

**Response:** Deny. Exhibit C at ¶¶ 1-7.

36. Thereafter, Plaintiff's mom called Principal Epps again and complained that her son was being harassed during the 2013-2014 school year. *Id.* at 18:10-23. In response, Principal Epps asked Plaintiff's mom if she had any names of students or any incident or dates or times

that she could describe, and she could not. *Id.* at 19:18-20. Principal Epps also told Plaintiff's

mom that she would talk to Plaintiff and get back to her. *Id.*

**Response:** Deny. Addl. Facts at ¶¶ 22-28.

37. Thereafter, Principal Epps again spoke with Plaintiff who insisted that he was not

being harassed, bullied, or otherwise bothered by anyone. *Id.* at 20:23-21:24.

**Response:** Deny. Exhibit C at ¶¶ 1-7.

38. After each meeting with Plaintiff, Principal Epps called Plaintiff's mom back to

inform her that Plaintiff denied being harassed, but to please share with her anything Plaintiff

shared with Plaintiff's mom in the future. *Id.* at 20:15-19; 22:6-9; 25:1-8.

**Response:** Deny. Addl. Facts at ¶¶ 22-28.

39. Thereafter, Principal Epps again met with Plaintiff's mom in person. Plaintiff's

mom complained that Plaintiff was being harassed and bullied. Principal Epps asked her if she

could provide any dates or names or specific incidents; she could not. *Id.* at 22:21-24:1.

**Response:** Deny. Addl. Facts at ¶¶ 22-28.

40. Thereafter, Principal Epps called Plaintiff down to her office while his mom was

there. Again, Principal Epps asked if he was being harassed or bullied and Plaintiff was adamant

that he was not. *Id.* at 24:4-14. Principal Epps told Plaintiff's mom that if she continued to have

concerns or had specific information to please contact her. *Id.* at 25:11-17.

**Response:** Deny. Deny. Exhibit C at ¶¶ 1-7; Addl. Facts at ¶¶ 22-28.

41. After each meeting with Plaintiff, Principal Epps asked his teachers to let her

know if they noticed him being harassed or being uncomfortable, to keep an eye out; however,

none of his teachers came to her after she reached out to them. *Id.* at 22:6-19; 25:18-26:6.

**Response:** Plaintiff has insufficient information to either admit or deny.

42.     Thereafter, Principal Epps and Plaintiff's mom had another face-to-face meeting. Plaintiff's mom complained again that Plaintiff was being bullied and harassed but did not have any names or specific incidents to report. *Id.* at 26:7-l-27:14.

**Response:**     Deny.  Addl. Facts at ¶¶ 22-28.

43.     Again, Plaintiff was called down to Principal Epps' office while his mother was there and was asked if he has been harassed and bullied. Plaintiff denied being bullied and/or harassed. *Id.* at 28:4-10.

   **Response:**     Deny.  Exhibit C at ¶¶ 1-7;

## VI.     November 6, 2014 Fight

44.     On November 6, 2014, another student, T.D. approached Plaintiff and asked him to give him his personal belongings. At the time, Plaintiff had "a couple of grams" of marijuana on him, which were split into four bags. Ex. 1, 231:4-232:2.

**Response:**     Admit that on November 6, 2014, another student, T.D. approached Plaintiff and asked him to give him his personal belongings.  Plaintiff objects to and moves to strike the second allegations as what Plaintiff had on his person is irrelevant, not calculated to lead to relevant information, and is merely offered for the purpose of prejudicing Plaintiff.  Moreover, Bailey did not believe T.D. was aware that he had marijuana on him because Bailey did not tell anyone that he did.  Bailey Dep. at 232, lns. 4-7.  In fact, T.D. never told police that Bailey had marijuana, rather he falsely told police that Plaintiff had crack.

45.     According to Plaintiff, the two then had the following exchange:

   T.D.: What's up, white boy, so what you got for me, what's in your pockets.

   Plaintiff: I said I got nothing for you.

> T.D.: You can make this easy or you, we can do it the hard way.
>
> Plaintiff: Well, you can do what you got to do then, because I'm
>
> not giving you anything I have.

*Id.* at 232:14-21.

**Response:** Admit.

Bailey had his wallet and phone in his pockets that day. Bailey Dep. at 152, lns. 19-24.

46. T.D. did not respond, and Plaintiff continued walking down the stairs. As he reached the landing, T.D. tapped him on the shoulder, Plaintiff turned around, and T.D. punched him in the face. *Id.* at 232:23-233:10.

**Response:** Admit.

47. Thereafter, three other students started beating up Plaintiff as well. Plaintiff believes that they were all members of the gang "Black Disciples." *Id.* at 234:2-21.

**Response:** Admit.

48. The four students jumped on Plaintiff; pulled his pockets out; and tried to take his book bag, but at that point Plaintiff's "adrenaline" hit him and he threw all of them off him and started fighting for himself; managing to "punch a few people." *Id.* at 234:24-235:7.

**Response:** Admit.

49. Plaintiff also claims that during the fight, T.D. said "you piece of shit cracker, you just should have just gave [sic] your shit up," *Id.* at 235:8-15, but he also doesn't "remember much at all" after he got hit by T.D. *Id.* at 236:22-237:2. He also never reported to school officials that T.D. referred to him as "cracker." *Id.* at Ex. 1 at 194:18-195:19; Ex. 7 at 50:21-51:2, 106:13-107:9; Ex. 11 at 173:8-174:23; and Ex. 15 at 64:19-22.

**Response:** Admit.

50.     Plaintiff was able to get away and the security guard, Mr. Ernest Radcliffe, grabbed him and took him to the nurse. *Id.* at 235:21-236:21; see also Ex. 14, Radcliffe's Dep. Transc. at 32:3-20; 33:8-12; Ex. 9, Nurse Report.

**Response:**     Admit.

## VII.     Plaintiff's Arrest For Possession of Marijuana after November 6, 2014 Fight

51.     Thereafter, the police came and asked Plaintiff what had happened. *Id.* at 237:15-17; 238:14239:4. Plaintiff told the police the following: "they were trying to pickpocket me and I wouldn't give my stuff up, so they jumped me to get my stuff. And I was able to fight my way enough to run away, you know, a couple of feet to the security guards." *Id.* at 238:16-22; see also Ex. 6 at 85:4-18 (Plaintiff told his wife that T.D. hit him after Plaintiff told T.D. he didn't have any marijuana).

**Response:**     Admit that's what he told the police.  Object to and move to strike the statement of the wife based upon hearsay.

52.     The police officers informed Plaintiff that T.D. believed Plaintiff had crack on him. *Id.* at 239:6-18. Plaintiff denied having crack on him but admitted that he had marijuana on him which was confiscated. *Id.* at 239:21-240:10. Plaintiff informed a school official that he was selling marijuana to make extra money since he was living with his girlfriend and not at home at the time.   At that time the plastic bags of marijuana had already been pulled from Plaintiff's book bag. Ex. 7, Dean Rhonda Nocentelli's Dep. Transc. 41:1-19; Ex. 8, November 6, 2014 Verify Report; Ex. 17, Plaintiff's November 16, 2014 Misconduct Report.

**Response:**     While Plaintiff testified, he sold marijuana to make some extra money, he stated that the person who he sold it to went to a different school and that no one at Morgan Park knew he was selling drugs.  Bailey Dep. at 106, lns. 1-8, 18-22.

53.     Thereafter, Plaintiff was arrested, along with T.D. *Id.* at 241:5-22. On the way to the police station, T.D. said to Plaintiff "you should have [given] it up, none of this would have happened." *Id.* at 241:23-242:7. Plaintiff said back to T.D.: "there's no reasons for like what were you going to take my wallet, that had like 20 bucks in it, what was really the meaning for this," and had the opinion that T.D. jumped him because "he was trying to earn respect in his gang." *Id.* at 242:9-17.

**Response:**     Admit.

54.     Plaintiff did not say anything else to T.D. during the car ride to the police station; he was "just kind of sitting there laughing."  *Id.* at 242:21-243:3.

**Response:**     Admit.

55.     At the police station, Plaintiff talked to a detective who wanted to know why T.D. jumped Plaintiff, and "eventually it came to he just wanted [Plaintiff's] stuff." *Id.* at 244:1-11; Ex. 6, Plaintiff's Wife Julia Rinehart's Dep. Transc. 57:3-11; 112:20-113:2; Ex. 7 at 52:2-23 (T.D. informed Dean Nocentelli that he jumped Plaintiff because he had his money and was selling drugs).

**Response:**     Plaintiff was taken to the police station because T.D. told them Plaintiff had crack.  Bailey Dep. at 244, ln. 24; 245, lns. 1-8.  T.D. eventually told the police that he had just made up the excuse about the crack and just wanted Plaintiff's personal belongings.  Bailey Dep. at 244, lns. 5-11.  Plaintiff was never charged with anything.  *Id.* at 245, lns. 23-24.

**VIII.   Morgan Park's Response to November 6, 2014 Fight**

56.     After the fight, Principal Epps went to the nurse's office to make sure Plaintiff was okay. Ex. 1 at 261:17-262:6; 262:7-17. Plaintiff conveyed to Principal Epps that he did not want any more trouble and would like to finish the school year in peace. *Id.* at 262:13-21.

Principal Epps said that she would do what she can and that the students would be disciplined. *Id.* at 262:2223; Ex. 15 at 39:2-7.

> **Response:** Admit.

57. Immediately after the fight, T.D. was taken down to the Dean's office and questioned by Dean Nocentelli before he was arrested. Ex. 14 at 33:8-12. In addition, after the video surveillance was pulled, the other students involved in the fight were identified and brought down to the Dean's Office. Ex.7 at 30:3-12; Ex. 8. November 6, 2014 Verify Report.

> **Response:** Admit.

58. Parent teacher conferences were held with all students involved, and all students received a five-day suspension. *Id.* Specifically, Dean Nocentelli met with Plaintiff, Plaintiff's mom, and the police officers present at the school. Ex. 7 at 106:13-107:9.

> **Response:** Admit. In addition, Bailey was referred to the SMART program as an alternative to expulsion. Epps Dep., hereto attached as Exhibit D, at 35, lns. 20-24; 36, lns. 1-5. Principal Epps told Ms. Ramirez, "we think that maybe he should try and go to another school and that would be better for him to go to another school." Amy Ramirez Dep. at 174, lns. 11-14. Principal Epps then gave Ms. Ramirez a number for CPS to call. *Id.*, lns. 16-17.

59. T.D. was expelled from Morgan Park as a result of November 6, 2014 Fight. Ex. 1, 249:22-24; Ex. 10, T.D. Expulsion Records.

**Response:** Plaintiff can neither admit nor deny, as Principal Epps testified that T.D. was expelled for an assault of a female student that occurred in October 2014. Exhibit D at 58, lns. 2-5.

60.     At no time did Plaintiff or Plaintiff's mom complain to any school official that Plaintiff was targeted on November 6, 2014 due to his race. Ex. 7 at 50:21-51:2, 106:13-107:9; Ex. 11, Plaintiff's Mother's Dep. Transc. 173:8-174:23.

**Response:**     After the incident, Bailey's mother called Ms. Bedore, Bailey's counselor, to inquire about Bailey's grades. Exhibit B at 23, lns. 19-24. Ms. Ramirez told her that Bailey would not be returning to school because he was too afraid to step foot into the school. Exhibit B at p. 24, lns. 3-24; 25, lns. 1-19.

61.     After this incident, Plaintiff did not talk to anyone at the Morgan Park and never returned. Ex. 1 at 247:1-4.

**Response:**     Plaintiff's mother spoke to Principal Epps after the incident and requested to see the tape of the incident. Amy Ramirez Dep. at 173, lns. 12-20. Principal Epps did not permit Ms. Ramirez to see the tape and told her that Bailey would be suspended from school. *Id.*, lns. 14-24.

**Additional Facts Requiring Denial of Summary Judgment**
**LR 56.1 (b)(3)(B)**

1.     Plaintiff was bullied at Morgan Park since the second day of school. Bailey Dep. at 147, lns. 4-7; 24, lns. 1-2.

2.     The verbal harassment of Plaintiff included name-calling, racial slurs, "white boy, honky, cracker, names like that . . . white trash." Bailey Dep. at 147, lns. 8-18.

3.     His second day at Morgan Park, four male students started to fight Plaintiff, "tried to take [his] bookbag, they tried to pickpocket [him]." Bailey Dep. at 148, lns. 4-15. One of the students hit Bailey in the face, which caused some bruising. *Id.*, lns 14-23.

4.     The students were caught by a security guard down the hall. Bailey Dep. at 151, ln. 7.

5. Plaintiff later learned that the students were members of the Black Disciples Gang. Bailey Dep. at 154, lns. 10-13.

6. Mr. Yates told Bailey's mom that he saw what happened and that he knew the students. Amy Ramirez Dep. at 159, lns. 22-24; 160, lns. 11-16; 176, lns. 9-22. Mr. Yates told Ms. Ramirez that he talked to the students and told them to leave Bailey alone. *Id.*, lns. 18-24; 160, ln. 1.

7. Mr. Yates also gave Ms. Ramirez his telephone number and said to come to him if there were any further problems. Amy Ramirez Dep. at 177, lns. 19-24. He also said that she should tell Bailey that Bailey could come to him and tell him if there were any problems and that he would "take care of it." *Id.* at 178, lns. 1-2.

8. The following week, Ms. Ramirez spoke to Mr. Yates again, this time about Bailey getting jumped trying to go to the bathroom. Amy Ramirez Dep. at 179, lns. 9-16. Ms. Ramirez told Mr. Yates that Bailey was scared and that he didn't want to go to school anymore. Amy Ramirez Dep. at 180, lns. 16-24.

9. Ms. Ramirez spoke with Mr. Yates about the situation at least once or twice a week. Amy Ramirez Dep. at 181, lns. 19-21; 182, lns. 18-22.

10. While Ms. Ramirez did not know the names of any specific students, both Bailey and Mr. Yates knew the students were BDs and Bailey knew the students by face. Amy Ramirez Dep. at 189, lns. 6-11.

11. Mr. Yates knew the identity of the students bothering Bailey. Amy Ramirez Dep. at 189, lns. 20-24.

18

12.     Ms. Ramirez told Principal Epps that Mr. Yates told her that he knew the students, that they were part of the BD gang, and that he would take care of it.  Amy Ramirez Dep. at 161, lns. 10-12.

13.     Three days later the same person who initiated the first attack came up to Bailey in the bathroom, "started running his mouth" about what had happened and swung at Bailey. Bailey Dep. at 155, lns. 9-22.  He then tried chasing Bailey out of the bathroom, but a security guard was nearby so the situation did not escalate.  *Id.*, lns. 20-22.

14.     At the end of February, there was an incident in the lunch room.  Bailey Dep. at 168, lns. 1-11.  A student accused Bailey of throwing something at him, repeatedly stating "come on cracker, I knew you threw something at me."  *Id.*, lns 22-23; 169, lns. 4-8.  The student punched Bailey in the back of the head.  *Id.* at 169, lns. 13-14.  The security guards broke up the students before anything further happened.  *Id.*, lns 19-21.

15.     Approximately a month later, the student who initiated the first two attacks tried to "check" Bailey again.  Bailey Dep. at 188, lns. 6-7.  He came up to Baily and "was just like what's up white boy."  *Id.*, lns. 12-13.  He then tried pickpocketing Bailey again.  *Id.* at 189, lns. 17-23.

16.     After Bailey defended himself, the student walked away but soon returned with two other students; they all jumped on Bailey.  Bailey Dep. at 190, lns. 7-22.

17.     Bailey reported this incident, as well as the first two incidents with this student, to the interim principal.  Bailey Dep. at 194, lns. 1-10.  Bailey told the principal that he "felt that it had to do with something with me being white, because of what was constantly being said. . . . I was constantly being called a cracker, white trash, a white boy."  *Id.*, lns 11-23.

19

18.     In June of 2014, a fire alarm got pulled and the students were all outside.  Bailey Dep. at 220, lns. 23-24.  Bailey was on his phone texting his wife when a student grabbed the phone out of his hand; Bailey was then simultaneously punched in the face by two people.  *Id.* at 221, lns 12-20.

19.     The students that jumped Bailey were all members of the Black Disciples Gang. Bailey Dep. at 234, lns. 9-21.

20.     Bailey's mother constantly called the school and went to the school office to complain about what was happening to her son at Morgan Park.   Amy Ramirez Dep. at 150, lns. 13-24.

21.     Specifically, Ms. Ramirez complained to the school office, to Mr. Yates, the dean of students, teachers, the secretary in the office who called Ms. Ramirez a "stupid white bitch," to Mr. Radcliffe, and to Ms. Bedore, Bailey's counselor.  Amy Ramirez Dep. at 151, lns. 5-11, 19-23.

22.     When Principal Epps started at Morgan Park, Ms. Ramirez reported everything to her, including that Bailey "was jumped the second day, about how he was -- couldn't go to the bathroom, how he couldn't go to his locker, how they were always starting fights with him, how they were threatening him, how he didn't feel safe, how he would go home because they say if he stayed, they were going to kill him[.]"  Amy Ramirez Dep. at 156, lns. 13-21.

23.     Ms. Ramirez told Principal Epps "what was going on in the classes and what class, what teacher, how they wouldn't teach, how they would walk out of the room and just let the kids do whatever they wanted.  I told her the hours, what hours, the names of the teachers, and what classes they were."   Amy Ramirez Dep. at 157, lns. 14-24; 158, lns. 1-2.

24.     Principal Epps said she would look into it, but never got back to Ms. Ramirez. Amy Ramirez Dep. at 157, lns. 12-13.

25.     Ms. Ramirez told Principal Epps to talk to Mr. Yates who "knew the most. He saw the most." Principal Epps said she would talk to Mr. Yates, look into it, and get back to Ms. Ramirez.  Amy Ramirez Dep. at 158, lns. 12-14; 162, lns. 7-16.

26.     Bailey's mother kept calling Principal Epps, but she never got back to Ms. Ramirez.  Amy Ramirez Dep. at 162, lns. 12-13.

27.     About a month later, after Ms. Ramirez threatened, she would come down to the school if she did not get a return phone call, Principal Epps took Ms. Ramirez' call.  Amy Ramirez Dep. at 162, lns. 20-24; 163, 1-7; 164, lns. 6-13.  Principal Epps told Ms. Ramirez not to worry and assured her that Bailey would be safe.  Amy Ramirez Dep. at 165, lns. 18-23.

28.     After the incident, Ms. Ramirez told Principal Epps that she wanted to see the tape of what occurred.  Amy Ramirez Dep. at 173, ln. 12.  Principal Epps told her that she couldn't see the tape because they had to get "some special person to come down and get the tape out and then rewind it to that part, but that it would take like a week for that to happen and so that I would just have to wait and there was nothing I could do." *Id.*, lns. 14-20.

29.     Ms. Ramirez talked to Mr. Radcliffe in approximately February 2013 about what was happening to Bailey at Morgan Park.  Amy Ramirez Dep. at 205, lns. 1-12; 207, lns. 7-10; lns. 21-24.

30.     Ms. Ramirez also complained to Ms. Conway, the security guard operating the metal detector at the entrance.  Amy Ramirez Dep. at 213, lns. 12-18.  A couple months after Bailey started at Morgan Park, and after Ms. Ramirez had been to the school five or six times

21

already, Ms. Ramirez started complaining to Ms. Conway because she "wanted someone to do something." *Id.* at 214, lns. 19-22.

31.    Ms. Ramirez complained to the three people who worked in the office "hundreds of times." Amy Ramirez Dep. at 220, lns. 2-15; 221, lns. 1-3. Ms. Ramirez would say each time that she needed to talk to "someone that will take care of what's going on, that my kid shouldn't be afraid to go to school. He should be safe at school. He shouldn't have to worry about if he's going to be beat up at school. He should be able to go to the bathroom when he wants to go to the bathroom and not have to worry about getting jumped or beat up. That he should be able to go to his locker and not have to carry all of his books in a bookbag around with him because they wait for him at his locker to beat him up." *Id.* at 221, lns. 5-18.

32.    Mr. Yates remembers Ms. Ramirez speaking to him about concerns she had Bailey's safety in the spring of 2013. Exhibit A at 14, lns 20-24; 15, lns. 1-7; 17, lns. 12-15. According to Mr. Yates, Ms. Ramirez "wanted to know exactly what steps that we were taking; and it was explained to her that we just found out about it." *Id.*, lns. 8-10. Mr. Yates told Ms. Ramirez that he would go to the dean, Mr. McKnight, and that Mr. McKnight would handle it from there. *Id.*, lns. 10-12; 16, lns. 22-23.

33.    Mr. Yates did report Ms. Ramirez' complaints to Mr. McKnight, telling him "the parent had some concerns about her son's safety and that he is being jumped on; so, we need to investigate it to see exactly what's going on to resolve the issue. Exhibit A at 17, lns. 5-9. Mr. McKnight said he would look into it. *Id.*, lns. 10-11.

34.    Mr. Yates testified that there was a policy and practice in place at Morgan Park for documenting conversations or complaints made by students or parents concerning altercations, bullying, and social media situations. Exhibit A at 18, lns. 7-10. It was an incident

report form, which should have been logged into the computer database "Verify." *Id.* at 18, lns. 12-17.

35.     Mr. Yates did not document any of Ms. Ramirez' complaints because that would have been the duty of Mr. McKnight, a dean of students. Exhibit A at 19, lns. 7-16.

36.     Mr. Yates recalled that Ms. Ramirez complained to him again some time in 2013 or 2014. Exhibit A at 20, lns. 3-8. Ms. Ramirez again expressed concerns about some of the scholars who were in the building and concerns about her son being safe and feeling safe. *Id.*, lns. 9-20.

37.     Mr. Yates told Ms. Ramirez that she needed to speak with Mr. McKnight. Exhibit A at 21, lns. 7-15. He also spoke to Mr. McKnight himself "to make sure he connected with Ms. Ramirez to see exactly what was happening with her son." *Id.* at 21, lns.19-24; 22, lns. 1-2.

38.     Mr. Yates also recalled Bailey talking to him about being bullied on at least two occasions, the first time occurring in the spring of 2013. Exhibit A at 23, lns. 5-16; 24, lns. 2-5; 26, lns. 16-21.

39.     Mr. Yates told Bailey he needed to speak with the deans and that he would also make mention of Bailey's concerns to the deans. *Id.* at 25, lns. 14-23.

40.     Mr. Yates spoke to Mr. McKnight again about Bailey, telling him that Bailey was feeling uncomfortable and he was being bullied "and we needed to address the situation to find out who the other scholars were who were involved in this and to bring up the parents to resolve it." *Id.* at 26, lns. 4-11.

41.     Mr. Yates also admitted that he may have seen students exhibit negative body language and may have overheard some teasing about Bailey that made him think he should caution the students, but he could not remember any particulars. Exhibit A at 30, lns. 6-12.

42.     Edward McKnight testified that he never spoke to Mr. Yates about Bailey. McKnight Dep., hereto attached as Exhibit E, at 12, lns. 20-24; 13, lns. 1-6.

43.     As disciplinarian, Mr. McKnight had multiple dealings with T.D., also known as "Taco," in the 2012-2013 and 2013-2014 school years.  T.D. was known to "pal around" with gang members.  Exhibit E, at 14, lns. 5-12, 15, 17-24.   He described T.D. as a disciplinary problem.  Exhibit E at 15, lns. 18-22.  T.D. "fought a lot" according to Mr. McKnight.  *Id.* at 16, lns. 2-8.  T.D. got in trouble for fighting at least five or six times at Morgan Park.  *Id.* at 18, lns. 9-13.  Mr. McKnight disciplined T.D. "quite frequently."  *Id.* at 23, lns. 23-24;  24, lns. 3-4.

44.     There are security surveillance cameras throughout the entire building at Morgan Park, including in the hallways and in the lunchroom.  Radcliffe Dep., hereto attached as Exhibit F, at 11, lns. 17-24;  12, lns. 1-11.  In 2014, Ms. Conway was responsible for monitoring the cameras.  *Id*. at 12, lns. 11-17.

45.     Principal Epps did not make any sort of recordation in the Board of Education system regarding her conversations with Bailey or his mom.  Exhibit D at 16, lns. 21-24.

46.     In October 2014, T.D. assaulted a young woman at school by grabbing her buttocks and verbally assaulting her.  Exhibit D at 49, lns. 9-24; 50, lns. 1-5.  T.D. was suspended for five days as a result of this incident and was referred to the Law Department for an expulsion hearing.  *Id.* at 51, lns. 12-16; 52, lns. 15-21; 53, lns. 3-8.

47.     Depending upon how long the Law Department takes with regard to the expulsion request, the student may be placed back into the student population pending resolution, which is what happened with T.D.  Exhibit D at 52, lns. 21-24; 54, lns. 1-2.  Principal Epps testified that T.D. was expelled for the October 2014 incident.  *Id.* at 58, lns. 2-5.

48.    T.D. had been referred for expulsion multiple times while at Morgan Park, including several incidents on December 10, 2012, an incident on May 7, 2013, an incident on June 20, 2013, an incident on August 26, 2013, an incident on August 30, 2013, and an incident on September 10, 2013.  Exhibit D at 56, lns. 9-20; 58, lns. 16-24; 59, lns. 1-8, 20-24; 60, lns. 10-17; 62, lns. 2-19; 63, lns. 1-20.

49.    Regarding the August 30, 2013 incident, T.D. and another student battered a Morgan Park student for no apparent reason, striking the student in the face with a closed fist so hard that the student fell to the ground and lost consciousness.  *Id.* at 62, lns. 3-19.

50.    On September 10, 2013, T.D. physically assaulted and battered a classmate in a classroom during instructional time.  Exhibit D at 63, lns. 7-13.  T.D. reportedly stood up from his seat, walked over to a student and began to repeatedly punch the victim in the face.  *Id.*, lns. 14-17.

Respectfully submitted,
BAILEY RINEHART


/s/ Deidre Baumann
_____
  By:    His Attorney

Baumann & Shuldiner
Counsel for Plaintiff
20 South Clark Street, Suite 500
Chicago, Illinois 60603

(312) 558-3119